UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SAMUEL FRATTO III and JAMES JOHANNEMANN, as Trustees of I.B.E.W. LOCAL 363 PENSION FUND, WELFARE FUND, MONEY PURCHASE PENSION FUND, VACATION AND PAID HOLIDAY FUND, SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND, LABOR MANAGEMENT COOPERATIVE FUND, and JOINT APPRENTICE TRAINING FUND, and GILBERT HEIM, as President of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 363,

**COMPLAINT**

Civil Action No.: 21-cv-5738

                          Plaintiffs,

-against-

ALLIANCE ELECTRICAL & SURVEILLANCE SYSTEMS, LLC and PETER AMROD,

                          Defendants.
------------------------------------------------------------------------x

      Plaintiffs, SAMUEL FRATTO III and JAMES JOHANNEMANN, as Trustees of I.B.E.W. LOCAL 363 PENSION FUND, WELFARE FUND, MONEY PURCHASE PENSION FUND, VACATION AND PAID HOLIDAY FUND, SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND, LABOR MANAGEMENT COOPERATIVE FUND, and JOINT APPRENTICE TRAINING FUND (hereinafter, collectively, the "Funds"), and GILBERT HEIM, as President of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 363 (hereinafter, the "Union"), by and through their attorneys, Archer, Byington, Glennon & Levine, LLP, as and for their complaint, respectfully allege as follows:

## NATURE OF ACTION

1. This action arises under Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. §185, and Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1132(a)(2) and 1132(a)(3). Plaintiffs bring this action to recover unpaid fringe benefit contributions and for breach of fiduciary duty and violation of Sections 515, 406, and 404 of ERISA, 29 U.S.C. §§1145, 1106 and 1104, and for failing to comply with the statutory and contractual obligations arising by virtue of defendant ALLIANCE ELECTRICAL & SURVEILLANCE SYSTEMS, LLC.'s collective bargaining agreement with the Union.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court by Sections 502(e)(1) and (f) of ERISA, 29 U.S.C. §§1132(e)(1) and (f), by Section 301(a) of the LMRA, 29 U.S.C. §185(a), and under 28 U.S.C. §1331 and §1367.

3. Venue properly lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and under Section 301(c) of the LMRA, 29 U.S.C. §185(c). Service may be made on defendants in any district in which defendants may be found pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2).

## PARTIES AND BACKGROUND

4. Plaintiffs, Samuel Fratto III and James Johannemann, are fiduciaries of the Funds within the meaning of Sections 3(21) and 502 of ERISA, 29 U.S.C. §§1002(21) and 1132.

5. Plaintiff, Gilbert Heim, is President of the Union, a labor organization within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185(a), which represents employees in an industry affecting commerce as defined in 29 U.S.C. §142. The Union has its principal office and place of business at 67 Commerce Drive, Harriman, New York 10926.

6. At all relevant times, plaintiff Funds are and have been employee benefit welfare plans and/or employee benefit pension plans as defined in ERISA, 29 U.S.C. §1002(1) and (2), and are multiemployer plans within the meaning of ERISA, 29 U.S.C. §§1145 and 1002(37)(A). The Funds are at all relevant times "Taft Hartley" plans, meeting the requirements of 29 U.S.C. §§186(c)(5), (6) and (9). The Funds are administered and have a principal place of business at 67 Commerce Drive, Harriman, New York 10926.

7. Plaintiff Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA, 29 U.S.C. §1132(d)(1). The purpose of the Funds is to receive and collect required fringe benefit contributions and to provide various fringe benefits for eligible employees on whose behalf employers contribute to the Funds pursuant to Collective Bargaining Agreements. The Funds were established and are operated pursuant to written Agreements and Declaration of Trust, in accordance with Section 402 of ERISA, 29 U.S.C. §1102.

8. Upon information and belief, defendant ALLIANCE ELECTRICAL & SURVEILLANCE SYSTEMS, LLC. ("Alliance") is a domestic limited liability company organized and existing under the laws of the State of New York, with a principal place of business and/or mailing address at 4314 State Route 9G, Germantown, NY 12526 and/or 620 Eder Road, Stormville, New York 12582.

9. Upon information and belief, defendant PETER AMROD ("Amrod"), is an individual with a principal place of business and/or mailing address at 4314 State Route 9G, Germantown, NY 12526 and/or 620 Eder Road, Stormville, New York 12582.

10. Upon information and belief, as more fully set forth herein, defendants are each an "employer" within the meaning of the National Labor Relations Act, Section 2(2), 29 U.S.C. §152(2), and Sections 3(5) and 515 of ERISA, 29 U.S.C. §§1002(5) and 1145.

3

11. To the extent that Alliance and/or Amrod exercised any discretionary authority or control with respect to the management or disposition of assets of the Funds, said defendants are fiduciaries within the meaning of ERISA, 29 U.S.C. §1002(21)(A).

12. The defendants are parties in interest with respect to the Funds as defined in ERISA, 29 U.S.C. §1002(14), and act directly as employers and/or indirectly in the interests of employers in relation to the Funds within the meaning of ERISA, 29 U.S.C. §1002(5).

## AS AND FOR A FIRST CLAIM FOR RELIEF

13. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 12 hereof, as if fully set forth herein and with the same force and effect.

14. At all relevant times, the defendants ALLIANCE ELECTRICAL & SURVEILLANCE SYSTEMS, LLC. and PETER AMROD have been party to or otherwise bound by an uninterrupted series of Collective Bargaining Agreements (the "CBA"), the most recent of which with a term April 1, 2018 through March 31, 2022, governing rates of pay, wages, hours, and other conditions of employment of Union members and others employed by Alliance within the collective bargaining unit covered by the CBA. At all times mentioned herein, the CBA has been in full force and effect.

15. Upon information and belief, the CBA was entered into and/or administered and continued on behalf of Alliance, by or at the direction of Amrod, in his capacity as officer and/or owner of Alliance.

16. Pursuant to the CBA, Alliance agreed and is obligated to pay employee benefit contributions and assessments to the Funds, in agreed amounts and specified percentages of the wages of employees covered by the CBA.

17.     The CBA provides, among other things, that an employer delinquent in the payment of fringe benefit contributions shall be liable for all contributions owed, together with interest, attorneys' fees, court costs and audit fees, all in accordance with ERISA.

18.     Upon information and belief, Amrod is now, and was at all relevant times, the managing member of Alliance.

19.     Upon information and belief, Amrod is now, and was at all relevant times, directly responsible for the day to day management of the business and affairs.

20.     Upon information and belief, at all relevant times, Alliance has conducted business operations out of the premises located at 4314 State Route 9G, Germantown, NY 12526 and/or 620 Eder Road, Stormville, New York 12582.

21.     Upon information and belief, Amrod, as controlling shareholder and/or corporate officer and management employee of the Alliance, exercises complete control over the labor relations and finances of Alliance, and was at all relevant times, and is now, directly responsible for payment to the Funds of the fringe benefit contributions and assessments required to be paid to the Funds under the CBA.  As such, Amrod is possessed of the power, authority, means and responsibility to cause Alliance to meet its obligations to the Funds.

22.     Upon information and belief, Amrod, among other acts and/or omissions, exercised control of Alliance operations to determine which employees were to be paid by Alliance, and which employees were to have fringe benefit contributions and assessments paid into the Funds and which were not, and which employees were to be recorded on the books and records of Alliance.

23.     As a result of work performed by individual employees on the payroll of Alliance, there are unpaid fringe benefit contributions and assessments due and owing to the Funds as required under the CBA, upon information and belief in the known amount of at least $35,594.06

5

for the period from in or about week ending June 26, 2020 through in or about week ending November 13, 2020, plus arrears on additional unreported contributions owed thereafter.

24. No part of these fringe benefit contributions and assessments have been paid, although duly demanded, and plaintiffs have been damaged.

25. By reason of the foregoing, defendants are liable to the Funds, jointly and severally, for unpaid fringe benefit contributions and assessments in the amount of at least $35,594.06, plus such additional sums for unpaid fringe benefit contributions and assessments as have and may hereafter come due during the pendency of this action, together with interest thereon, liquidated damages, and the attorneys' fees and costs of this action.

## AS AND FOR A SECOND CLAIM FOR RELIEF

26. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 25 hereof, as if fully set forth herein and with the same force and effect.

27. Pursuant to §209 of ERISA, 29 U.S.C. §1059, Alliance has a duty to maintain detailed records regarding the hours worked by employees for whom fringe benefit contributions and assessments have and/or are required to be paid to the Funds.

28. Pursuant to the CBA, Alliance is required, inter alia, to file certain employer contribution report with the Funds, and is further required to permit and cooperate in the conduct of audits of Alliance's books and payroll records, and to furnish to the Funds such information, books, records and reports as are required to ensure compliance with the terms of the CBA, and to ascertain the amount of fringe benefit contributions and assessments due and payable to the Funds.

29. Despite due demand, Alliance has failed and refused to permit and cooperate in the conduct of an audit of their books and records, and/or has failed and refused to furnish to the Funds required information, books, records and reports to ensure compliance with the terms of

z

the CBA, and to ascertain the amount of fringe benefit contributions and assessments due and payable to the Funds.

30. The failure, refusal and neglect of the defendants to provide complete access to Alliance's books and records by the Funds, constitutes a violation and breach of Alliance's statutory and contractual duties, and has damaged the Funds.

31. Pursuant to ERISA, 29 U.S.C. §1132, and in accordance with the CBA, plaintiffs are entitled to an Order compelling defendants to permit and cooperate in the conduct of an audit of Alliance's books and payroll records, and to produce to the Funds' auditors all books, records and reports required to conduct a payroll audit and to ensure compliance with the terms of the CBA, and to ascertain the amount of fringe benefit contributions and assessments due and payable to the Funds, together with an award to plaintiffs of the audit fees, costs, disbursements and attorneys' fees incurred, as provided by the CBA and pursuant to ERISA, 29 U.S.C. §1132.

## AS AND FOR A THIRD CLAIM FOR RELIEF

32. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 31 hereof, as if fully set forth herein and with the same force and effect.

33. Section 515 of ERISA, 29 U.S.C. §1145, requires every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement, to make such contributions in accordance with the terms and conditions of such plan or such agreement.

34. The Funds are multiemployer plans as defined in Section 3(37)(A) of ERISA, 29 U.S.C. §1002(37)(A).

35. By virtue of the CBA, Alliance is statutorily required to make contributions to the Funds pursuant to Section 515 of ERISA, 29 U.S.C. §1145.

36. The failure, refusal, or neglect of Alliance to make the required contribution payments to the Funds constitutes a violation of defendants' statutory duty, and has injured the Funds by delaying the of investment contributions and causing unnecessary administrative expense to the Funds.

37. Section 502 of ERISA, 29 U.S.C. §1132, provides that upon a finding of an employer violation of Section 515 of ERISA, 29 U.S.C. §1145, the Court shall award to a plaintiff fund the unpaid fringe benefit contributions, plus interest on the unpaid amounts computed at a rate set forth in the plan, or if none, as set forth in the United States Internal Revenue Code [26 U.S.C. §6621], plus an additional amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the Plan up to the sum of twenty percent (20%) of the unpaid contributions, together with reasonable attorneys' fees, costs and disbursements incurred in the action.

38. Accordingly, pursuant to ERISA, 29 U.S.C. §1132, and the CBA, plaintiffs are entitled to an award of all unpaid and unreported fringe benefit contributions required to be paid to the Funds by virtue of work performed by employees on the payroll of Alliance, together with interest on the unpaid contributions at the rate of twenty (20%) percent per year as provided in the CBA, plus an additional amount equal to the greater of (i) nine (9%) percent interest on the unpaid contributions or (ii) liquidated damages in the amount of up to twenty (20%) percent of the unpaid contributions as provided in the Plan, together with the audit fees, attorneys' fees, costs and disbursements incurred in the action.

### AS AND FOR A FOURTH CLAIM FOR RELIEF

39. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 38 hereof, as if fully set forth herein and with the same force and effect.

40. Pursuant to ERISA, 29 U.S.C. §1104(a)(1)(A), fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses."

41. Upon information and belief, as a result of work performed by or on behalf of Alliance under the CBA, the defendants received sums of money for construction projects intended to pay the wages and benefits of employees furnishing labor on the said construction projects, and, upon information and belief, fringe benefit contributions and dues and wage deductions remain unpaid for such work.

42. The defendants are fiduciaries within the meaning of ERISA, under the common law, and Article 3A of the New York Lien Law, with respect to these construction project proceeds, and/or the plan assets and/or dues deductions that they failed to timely pay over to plaintiffs.

43. Upon information and belief, at all relevant times, defendant Amrod completely owned and/or controlled and dominated the affairs of Alliance, and carried on the business of Alliance for his own personal ends.

44. Upon information and belief, at all relevant times, defendant Amrod had managerial discretion and control over Alliance, and made all decisions concerning payments by Alliance.

45. Upon information and belief, at all relevant times, defendant Amrod determined which creditors Alliance would pay, determined when the plaintiffs would be paid, determined how much in required contributions and assessments would be paid to plaintiffs, and exercised discretionary control over fringe benefit contributions and assessments due and owing to the plaintiffs and/or employees covered by the CBA.

46. Upon information and belief, defendant Amrod had co-mingled construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages, with Alliance's general assets, and used such proceeds and/or plan assets and/or dues and fringe benefit deductions to pay other creditors of the defendants, rather than forwarding those monies to the plaintiffs.

47. Upon information and belief, while causing Alliance to retain construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages, defendant Amrod diverted those assets to his own personal use and/or benefit.

48. By withholding the plaintiffs' assets and/or dues and fringe benefits deducted from employees' wages, and/or by diverting construction project proceeds, the defendants unlawfully received and retained for their own personal use and benefit monies which are rightfully assets of the plaintiffs and/or employees covered by the CBA, and in violation of ERISA, 29 U.S.C. §1104(a)(1)(A), and have violated their fiduciary obligations owed to plaintiffs and the Funds' participants and beneficiaries.

49. By withholding plan assets and/or dues and fringe benefits deducted from employees' wages, and/or by diverting construction project proceeds, the defendants have failed to abide by the documents and instruments governing the Funds in violation of ERISA, 29 U.S.C. §1104(a)(1)(D), and their fiduciary obligations owed to plaintiffs and the Funds' participants and beneficiaries.

50. By withholding plan assets and/or dues and fringe benefits deducted from employees' wages, and/or by diverting construction project proceeds, defendant is Amrod individually and personally liable, and defendants Amrod and Alliance are jointly and severally liable, for the violations of ERISA described above, and for violation of their fiduciary obligations owed to plaintiffs and the Funds' participants and beneficiaries.

51. By reason of the foregoing, the defendants are liable, jointly and severally, to plaintiffs for all diverted construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages which remain unpaid, as well as interest, liquidated damages, and the costs and legal fees of collection, and to restore to the plaintiffs any profits that defendants made through use and retention of diverted construction project proceeds, plan assets and/or dues and fringe benefits deducted from employees' wages, pursuant to Section 409 of ERISA, 29 U.S.C. §1109, and their fiduciary obligations owed to plaintiffs and the Funds' participants and beneficiaries.

**AS AND FOR AN FIFTH CLAIM FOR RELIEF**

52. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 51 hereof, as if fully set forth herein and with the same force and effect.

53. Pursuant to ERISA, 29 U.S.C. §1106(a)(1)(A) and (B), it is unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit. Absent an exemption, ERISA makes it unlawful for fiduciaries to deal with plan assets for their personal account, 29 U.S.C. §1106(b)(1)-(3).

54. At all relevant times herein, the defendants were parties in interest with respect to the plaintiff Funds within the meaning of ERISA, 29 U.S.C. §1002(14).

55. By diverting construction project proceeds and/or withholding plan assets and/or dues and fringe benefits deducted from employees' wages from the plaintiff Funds, defendants have unlawfully dealt with plan assets in their own interest and/or exchanged property or extended credit from plan assets for their own use and benefit, in violation of ERISA, 29 U.S.C. §1106(a) and (b).

56. As a result of the breaches of fiduciary duty described above, the defendants are liable to plaintiffs, jointly and severally, for all diverted construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages which remain unpaid, as well as interest, liquidated damages, and the costs and legal fees of collection, and to restore to the plaintiffs any profits that defendants made through use and retention of diverted construction project proceeds, plan assets and/or dues and fringe benefits deducted from employees' wages, pursuant to Section 409 of ERISA, 29 U.S.C. §1109, and their fiduciary obligations owed to plaintiffs and the Funds' participants and beneficiaries.

## AS AND FOR A SIXTH CLAIM FOR RELIEF

57. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 56 hereof, as if fully set forth herein and with the same force and effect.

58. If this Court does not enjoin the defendants from further violations of ERISA, the LMRA, and the CBA, plaintiffs and the Funds' participants and beneficiaries will be further damaged as a result, in ways and amounts which cannot be accurately measured in terms of money, either as to extent or amount.

59. The defendants have failed to comply with their obligations to the plaintiffs and the Funds' participants and beneficiaries, despite demand for compliance, and thus, upon information and belief, unless this Court enjoins defendants from violating ERISA, the LMRA, and the CBA, these defendants will continue to fail to timely remit required contributions and assessments, and monthly remittance reports, causing additional serious and irreparable harm by further burdening and obstructing the administration and operation of the Funds, and endangering the payment of promised benefits from the Funds to qualified beneficiaries.

60.     The defendants' continuing failure to comply with their obligations to plaintiffs and the Funds' participants has reduced the corpus and income of the Funds thereby jeopardizing the stability and soundness of the Funds, as well as the ability to pay benefits.

61.     Based on the foregoing instances of serious, substantial, and irreparable injury and damage, a mere money judgment is an inadequate remedy at law.

62.     Unless this Court enjoins the defendants from breaching ERISA, the LMRA, and the CBA, and unless defendants are compelled to remit all monies and reports that become due or are determined to be due to plaintiffs, whether arising before or after commencement of the action, greater injury will be inflicted upon the plaintiffs and the Funds' participants and beneficiaries, by denial of relief, than could possibly be inflicted upon these defendants by granting such relief.

**WHEREFORE**, plaintiffs demand judgment against defendants, as follows:

(a)     On the First Claim for Relief, an award of damages against defendants, jointly and severally, for unpaid fringe benefit contributions and assessments in the amount of at least $35,594.06, plus such additional sums for unpaid fringe benefit contributions and assessments as have and may hereafter come due during the pendency of this action, together with interest thereon, liquidated damages, and the attorneys' fees and costs of this action;

(b)     On the Second Claim for Relief, entry of an Order compelling defendants to permit and cooperate in the conduct of an audit of Alliance's books and payroll records, and to produce to the Funds' auditors all books, records and reports required to conduct a payroll audit and to ensure compliance with the terms of the CBA, and to ascertain the amount of fringe benefit contributions and assessments due and payable to the Funds, together with an award to plaintiffs of the audit fees, costs, disbursements and attorneys' fees incurred, as provided by the CBA and pursuant to ERISA, 29 U.S.C. §1132;

(c) On the Third Claim for Relief, entry of judgment pursuant to ERISA, 29 U.S.C. §1132(g)(2), awarding damages for all unpaid and unreported fringe benefit contributions required to be paid to the Funds by virtue of work performed by employees on the payroll of any of Alliance, together with interest on the unpaid contributions at the rate of twenty (20%) percent per year as provided in the CBA, plus an additional amount equal to the greater of (i) nine (9%) percent interest on the unpaid contributions or (ii) liquidated damages in the amount of up to twenty (20%) percent of the unpaid contributions as provided in the Plan, together with the audit fees, attorneys' fees, costs and disbursements incurred in the action, and that defendants, jointly and severally, are liable to the plaintiffs therefor;

(d) On the Fourth Claim for Relief, entry of judgment against all defendants, jointly and severally, to recover all diverted construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages, for which fringe benefit contributions and assessments remain due and unpaid, as well as interest, liquidated damages, and the costs and legal fees of collection, and to restore to the plaintiffs any profits that the defendants made through use and retention of all such diverted construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages in violation of ERISA, 29 U.S.C. §1104(a)(1)(A), and that defendants, jointly and severally, are liable to the plaintiffs therefor;

(e) On the Fifth Claim for Relief, entry of judgment against all defendants, jointly and severally, to recover all diverted construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages, for which fringe benefit contributions and assessments remain due and unpaid, as well as interest, liquidated damages, and the costs and legal fees of collection, and to restore to the plaintiffs any profits that the defendants made through use and retention of all such diverted construction project proceeds and/or plan assets

and/or dues and fringe benefits deducted from employees' wages in violation of ERISA, 29 U.S.C. §1106(a)(1)(A) and (B), and that defendants, jointly and severally, are liable to the plaintiffs therefor;

(f)     On the Sixth Claim for Relief, entry of judgment enjoining and directing the defendants, and each of them, to comply in all respects with the terms and conditions of the CBA, to pay the agreed upon fringe benefit contributions and assessments, and to supply all required information, in accordance with defendants' obligations under the CBA;

(g)     Directing such other and further relief as this Court deems just and proper.

Dated: Melville, New York
       July 2, 2021

ARCHER, BYINGTON, GLENNON & LEVINE, LLP

By:   */s/ James W. Versocki*
            James W. Versocki
            Jenny Lam
Attorneys for Plaintiffs
One Huntington Quadrangle, Suite 4C10
P.O. Box 9064
Melville, New York 11747-9064
631- 249-6565

775059